UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| PREMIER LAND DEVELOPMENT COMPANY, LLC | Plaintiff |
| v. | Civil Action No. 3:20-cv-149-RGJ |
| BEDROCK CONTRACTING, INC. | Defendant |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant Bedrock Contracting, Inc. ("Bedrock") moves for partial summary judgment. [DE 29]. Briefing is complete and the matter is ripe. [DE 37; DE 42]. For the reasons below, Bedrock's Motion for Partial Summary Judgment [DE 29] is **GRANTED**.

### I.   BACKGROUND

In late 2016, Premier Land Development Company, LLC ("Premier") contacted Bedrock, a demolition company, about "perform[ing] certain blasting work" at one of its property developments. [DE 29-1 at 146]. In December 2016, Bedrock sent Premier a quote ("First Quote") for the blasting work. [DE 29-2 at 154]. After negotiations, resulting in Bedrock lowering the cost of the bid, Bedrock sent Premier a revised quote ("Second Quote"). *Id.* The Second Quote provided that:

> The scope of work for Bedrock Contracting, Inc. includes
> - Blasting for Sanitary Trench Rock
> - Labor, Equipment & Materials
> - Pre Blast & Seismograph Monitoring
> - Traffic Control, Blasting-Related Only
>
> The scope of work does NOT include:
> - Engineering
> - Any blasting within 10' of existing utilities
> - Silt fence or temporary fence
> - Excavating or clearing

1

- Cleanup, Pavement Repair

Cost Breakdown:

| Description | Unit | Lump Sum Price |
|---|---|---|
| Sanitary Trench | LF | $29.75 |
| Mobilization & Pre Blast Surveys | LS | $10,575.00 |

**NOTES**

1. There will be no back charges associated with this work.

2. Should either party employ an attorney to institute suit to enforce any of the provisions hereof, to protect its interest in any matter arising under this contract, or to collect damages for the breach of this contract, the prevailing party shall be entitled to recover damages for the breach of this contract, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges and expenses incurred or expended therein.

3. **Blasting shall be per current best common standards and practices, but Bedrock Contracting shall not be responsible for any over breakage due to laminations or any unusual geological conditions in rock formation**.

4. All Trench Rock will be blasted to 2.0' plus O.D. pipe in this contract.

5. Any problems with rock breakage, elevations, or any other potential back charge shall be faxed to Bedrock Contracting at (859) 224-8533 and Bedrock Contracting given a reasonable time to remedy the problem. If any back charges are acceptable, they must be approved in writing on a daily basis by a responsible representative of Bedrock Contracting.

6. Payment for work done by Bedrock Contracting in a pay period shall be made within 5 days after end of time allowed for payment of any funds by owner to the prime contractor for that period, regardless of the amount of funds due the prime contractor.

7. Retainage to be paid first pay estimate after all excavation in rock is complete.

*Id.* at 158-59 (emphasis added).

According to Brian Lewis ("Lewis"), the estimator for Bedrock who prepared both quotes, "it is Bedrock's business practice to send a written proposal to its potential clients. The proposal

serves to illustrate the scope of work, a breakdown of the cost, as well as the proposed terms and conditions." *Id.* at 154.

Premier alleges that the terms of its blasting agreement with Bedrock are contained not in the Second Quote but in an oral agreement reached between the parties at some unspecified point before Bedrock was hired. [DE 9 at 63 ("Plaintiff and Defendant had an oral agreement wherein Defendant agreed to appropriately blast the underground rock for Plaintiff to be able to excavate the land for its Hidden Forest development")].

On February 13, 2017, Bedrock began blasting. [DE 29-2 at 154]. When Bedrock finished blasting in March 2017, Premier paid it $97,053.52. [DE 37 at 215]. However, Premier was "unhapp[y]" with Bedrock's "deficient" blasting work:

> 11. On or about April 10, 2017, Premier's project manager, Will Hurst, met with a Bedrock foreman, Jerry (last name unknown), at the project site.
>
> 12. Jerry looked at the area in which Bedrock had blasted and admitted that Bedrock had drilled three (3) inch holes instead of the three and one-half (3 1/2) holes that were required to obtain the desired results.
>
> 13. Jerry also acknowledged that Bedrock had utilized "wetpack": (ammonia nitrate) instead of dynamite.
>
> 14. On April 28, 2017, Will Hurst met with Bedrock representative Paul Wingo at jobsite to discuss Premier's unhappiness with the work performed by Bedrock.
>
> 15. Mr. Wingo also acknowledged that the blasting work that had been performed was deficient, and he agreed that Bedrock would return to the project site and re-blast some of the areas to satisfy Premier.
>
> 16. Bedrock performed additional drilling and blasting in limited areas, it wholly failed to satisfactorily resolve the issue.
>
> 17. On or about May 10, 2017, I, along with Will Hurst, met with Paul Wingo at Premier's office in Clarksville, Indiana. At the conclusion of the meeting, Mr. Wingo represented that Bedrock would address the issues Premier had with the work performed.

>18. On or about June 7, 2017, I and Will Hurst against met with Paul Wingo. The meeting again concluded with Mr. Wingo offering the hollow assurance that Bedrock would work with Premier
>
>19. Since the conclusion of this meeting, Mr. Wingo did not answer or not return any of Premier's calls.
>
>20. As a result of Bedrock's continued failure to address the deficient work, Premier was forced to rent equipment and provide labor to hoe-ram the entirety of the underground rock in order to enable excavation and removal. to make the situation right.

[Aff. Jeff Corbett, DE 37-2 at 225-26].[1]

Bedrock did not charge Premier for the additional blasting. [DE 29-2 at 154]. Premier alleges that Bedrock's promises on May 10, 2017 and June 7, 2017 that it would "remedy the situation" constitute two additional oral contracts. [DE 9 at 63-64]. Premier also alleges that Bedrock breached both of those oral contracts by failing to "appropriately address the situation." *Id.*

In February 2020, Premier sued Bedrock in this Court. [DE 1]. In April 2020, Premier filed an amended complaint. [DE 9]. Premier asserts three counts of breach of contract against Bedrock. *Id.* Bedrock answered and cross-claimed against Premier. [DE 12]. Bedrock now moves for partial summary judgment on Premier's claims against it. [DE 29].

---

[1] Fed. R. Civ. P. 56(c)(4) provides that "[a]n affidavit . . . used to . . . oppose a motion must be on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." The Court notes that, at best, only paragraphs 17 through 20 appear to satisfy this requirement. Along with the issue of whether the double-hearsay in paragraphs eleven through sixteen is admissible, it is unclear how Mr. Corbett has personal knowledge of conversations he did not participate in. *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) ("All affidavits, regardless of the author, must be made on personal knowledge and set forth facts that would be admissible in evidence. Thus, to the extent that the Solum affidavit was not based on personal knowledge, the district court improperly considered it") (internal citations omitted).

## II.     STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in a light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). The non-moving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. Pro. 56(c)(1)(A)–(B); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

### III. DISCUSSION

#### A. Count I: Breach of Contract

In Count I, Premier alleges that Bedrock breached its oral agreement with Premier to "appropriately blast the underground rock":

> 26. Plaintiff adopts paragraphs 1 through 25 of the Amended Complaint above as if fully restated herein.
>
> 27. Plaintiff and Defendant had an oral agreement wherein Defendant agreed to appropriately blast the underground rock for Plaintiff to be able to excavate the land for its Hidden Forest development.
>
> 28. Defendant performed the blasting work and was paid in full for the work.
>
> 29. Plaintiff alerted Defendant that Defendant did not appropriately blast the underground rock.
>
> 30. Defendant attempted to re-blast some areas; however, Defendant failed to appropriately resolve the issue.
>
> 31. Defendant has refused to compensate Plaintiff for damages proximately caused by its poor workmanship.
>
> 32. Plaintiff has been damaged by Defendant's failure to meet the agreement between the parties.
>
> 33. Therefore, Defendant has breached the oral agreement and Plaintiff is entitled to damages for this breach.

[DE 9 at 62-63].

Bedrock argues that the Second Quote, not the alleged oral agreement, contains the terms of its agreement with Premier:

> [T]he evidence establishes Bedrock made a written offer with specific terms, Premier responded to that offer, made a counter offer as to the unit pricing, and the parties accepted the terms of that offer with the reduction in pricing. Although the parties never signed the written agreement, Bedrock performed the work set forth in the agreement and Premier paid the price for the work as spelled out in the parties' agreement.

[DE 29-1 at 147].

Bedrock also contends that it "complied with the parties' contract because Bedrock appropriately blasted using 'best common practices' in it blasting operations." *Id.* at 149.

Premier asserts that "Premier and Bedrock's oral discussions formed the nature of the contract." [DE 37 at 218]. But Premier does not specify when it reached its oral agreement with Premier for the blasting work. Nor does it explicitly delineate the terms of that oral agreement or how those differ from the terms in the Second Quote. That said, it appears as though Premier is claiming that Bedrock promised in the alleged oral agreement to "blast the rock sufficiently to allow for excavation." *Id.* To begin, Premier's assertion that it reached an oral agreement with Bedrock *before* Bedrock began blasting in February 2017 is rebutted by its Answer to Bedrock's Eighth Interrogatory:

> 8. Please provide all terms you believe existed between Premier and Bedrock which constituted an oral agreement. Include in your response, the following:
>
> (a) The date of such oral agreement(s);
>
> (b) The identity of the individuals at Premier and Bedrock who entered into the oral agreement;
>
> (c) The exact terms of such oral agreement(s);
>
> (d) The basis of Premier's claim, if any, that there was a "meeting of the minds" concerning the terms of such oral agreement(s):
>
> (e) The compensation paid to Premier for such oral agreement(s);
>
> (f) How you allege Bedrock breached such oral agreement(s); and
>
> (g) The date(s) Premier claims Bedrock breached such oral agreement(s).
>
> ANSWER: Objection. Plaintiff objects to this interrogatory to the extent it seeks legal conclusions. Subject to and without waiving this objection, see the below responses.

> (a) Pursuant to the Complaint, **Plaintiff alleges that Premier and Bedrock entered into three (3) separate oral agreements with similar terms all due to Bedrock's failure to appropriately blast the project as provided by the original quote. These meetings took place on April 28, 2017, May 10, 2017 and June 7, 2017.**
>
> (b) April 28, 2017: Plaintiff's representative Will Hurst and Defendant's representative Paul Wingo; May 10, 2017: Mr. Hurst and Plaintiff's owner Jeff Corbett as well as Mr. Wingo; June 7, 2017: Mr. Hurst, Mr. Corbett and Mr. Wingo;
>
> (c) A meeting originally took place between Plaintiff's representative Will Hurst and the Defendant's foreman named Jerry (unknown last name) on April 10, 2017. At that meeting, Jerry said that he was originally concerned that the blasting would be unsuccessful because Bedrock used 3-inch holes instead of 3.5-inch and Bedrock used a different pattern. He also admitted that Bedrock used wetpack instead of dynamite that would have been successful. At the April 28, 2017 meeting, Mr. Wingo admitted that Bedrock did not successfully blast the underground rock and agreed that Bedrock would re-blast part of the rock to satisfy the complaints of Premier. At the May 10, 2017 meeting, Bedrock, through Mr. Wingo, admitted that the re-blasting did not solve the Complaint and Bedrock agreed to rectify the concerns. At the June 7, 2017 meeting, Mr. Wingo again admitted that Bedrock had failed to appropriately blast the site and Bedrock agreed to work to resolve the deficiencies.
>
> (d) Premier states that Bedrock agreed to perform additional work or otherwise pay for Premier's additional labor and damages for resolving Bedrock's deficient performance. Bedrock made these promises through its owner Paul Wingo.
>
> (e) Premier paid no additional monetary compensation.
>
> (f) Bedrock breached the agreement by failing to appropriately blast the project and/or to reimburse Premier for the damages incurred by Bedrock's failure of performance.
>
> (g) Bedrock breached the agreement by failing to correct its failed performance and by failing to reimburse Premier for the damages incurred by Bedrock's failure of performance.

[DE 29-4 at 188-90 (emphasis added)].

In answering the Eighth Interrogatory, Premier did not mention the alleged oral agreement it had with Bedrock for the blasting work. Rather, it stated that "Premier and Bedrock entered

into three (3) separate oral agreements with similar terms all due to Bedrock's failure to appropriately blast the project as provided by the original quote. These meetings took place on April 28, 2017, May 10, 2017 and June 7, 2017." *Id.* at 189. Premier also appears to concede in its Answer that the "original quote" which, other than the price, was identical to the Second Quote, defines what it means to "appropriately blast." Based on Premier's own representations, there is not a genuine issue of material fact about whether it had an oral agreement with Bedrock to perform the initial blasting work because there is simply no evidence that there was one. So the Court turns to Bedrock's argument that the Second Quote contains the terms of its blasting agreement with Premier.

"In the absence of a statute requiring a signature or an agreement that the contract shall not be binding until it is signed, parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated." *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 837 (Ky. 2013) (internal quotation marks and citation omitted). "[A] promise in a contract may be inferred wholly or partly from such conduct as justifies the promisee in understanding that the promisor intended to make a promise. To constitute such a contract there must, of course, be a mutual assent by the parties—a meeting of minds—and also an intentional manifestation of such assent." *Kellum v. Browning's Adm'r*, 231 Ky. 308, 21 S.W.2d 459, 463 (1929). "Such manifestation may consist wholly or partly of acts, other than written or spoken words." *Id.* Indeed, "[w]ords are not the only medium of expression. Conduct may often convey as clearly as words a promise or an assent to a proposed promise, and where no particular requirement of form is made by the law a condition of the validity or enforceability of a contract, there is no distinction in the effect of a promise whether it is expressed (1) in writing, (2) orally, (3) in acts, or (4) partly in one of these ways and partly in others." *Id.* "[I]f the proven facts

9

and circumstances are such as to fairly show that both the party rendering the services or furnishing the necessities and the one receiving them expected, understood and intended compensation should be paid, the court or the jury trying the case will be authorized to find an express contract for payment was entered into." *Victor's Executor v. Monson*, 283 S.W.2d 175, 176-77 (Ky. App. 1955).

Here, neither party signed the Second Quote.  Nonetheless, the parties' mutual assent to be bound by it is evidenced by Bedrock promising to perform blasting work, consistent with the terms in the Second Quote, and Premier hiring Bedrock to do it.  [*See* Aff. Lewis, DE 29-2 at 153  ("7. In exchange and in reliance on the December 16, 2016 proposal, and in consideration for its terms and conditions, Bedrock began blasting operations on Premier's Hidden Forest project on February 13, 2017")]; [Aff. Corbett, DE 37-2 at 224 ("6. Bedrock sent a revised quote on December 16, 2016. 7. The quote stated that it included blasting for sanitary trench rock; labor, equipment, and materials; pre blast and seismograph monitoring and traffic control for the blasting work. 8. Bedrock performed blasting on the property.  9. Bedrock was paid the sum of $97,053.52 for the work it performed")].

In the Second Quote, Bedrock promised to perform the blasting "per current best common standards and practices."  [DE 29-2 at 157].  Premier claims that Bedrock breached the agreement because it did not "blast[] the rock sufficiently to allow for excavation."  [DE 37 at 218].  Whether Bedrock "blast[ed] the rock sufficiently to allow for excavation" is irrelevant, however, because the terms of the parties' agreement provided only that Bedrock would blast according to "current best common standards and practices."  Bedrock's expert witness, Dr. Nathan Rouse, opined and averred that Bedrock used "best common standards and practices" during the blasting at the property development site:

> 2. I am a principal consultant for DynoConsult. I was retained by Bedrock Contacting, Inc. ("Bedrock") to review blast reports and blasting practices that were in use at the Hidden Forest construction site from February 13, 2017 through June 8, 2017, and determine if the blasting work was completed using the best common standards and practices.
>
> 3. As set forth in my report, attached hereto, I reviewed all of the blast reports (25 in total) performed by Bedrock on Premier Land Development Company, LLC's ("Premier") behalf at its Hidden Forest development in Louisville, Kentucky.
>
> 4. Based on my evaluation of the blast reports, I concluded Bedrock blasted appropriately and followed best common practices in the performance of its blasting operations for Premier at the Hidden Forest development.
>
> 5. It is further my conclusion that any poor breakage resulted from adverse geologic conditions encountered during the blasting and not Bedrock's blast design, procedure, or technique.

[DE 29-3 at 160-61, 162-184].

Bedrock has shown the lack of a genuine issue of material fact about whether the blasting was done "per current best common standards and practices." As a result, the burden shifts to Premier to produce specific facts showing a material issue of fact that Bedrock did not blast according to "best common standards and practices." *Anderson*, 477 U.S. at 247–48. Premier must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. Pro. 56(c)(1)(A)–(B). In its response, Premier does not cite to any "particular parts of materials in the record" to rebut Dr. Rouse's opinion. Instead, it baldly asserts:

> Premier informed Bedrock that it needed to be able to excavate the rock out of the development area. Bedrock knew that Premier was relying on it to blast the rock sufficiently to allow for excavation. Instead, Bedrock's blasting services wholly failed to disturb the underground formations. Premier essentially paid Bedrock to blow up some explosives. Then, Premier had to do the work it paid Bedrock for all over again on its own and ultimately at a higher cost. Allowing Bedrock to assert that the quote was the only basis of the agreement would allow them to avoid the consequences for their failure to competently provide the services agreed upon. Bedrock clearly did not blast the underground rock formations to allow Premier to

remove the rock without resorting to the rental of a hoe-ram and incurring the damages for down time, rental costs, and fuel costs.

[DE 37 at 218].

Premier cites no evidence in the record that it "informed Bedrock that it needed to be able to excavate the rock out of the development area." *Id.*; *see InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). Nor does it cite any evidence that Bedrock did not blast according to "best current practices and standards." Because Bedrock has demonstrated that there is not a genuine issue of material fact and that it should prevail on Count 1 as a matter of law, the Court grants its motion for partial summary judgment as to Count 1.

**B. Count II and Count III: Breach of Contract**

In Count II, Premier alleges that:

34. Plaintiff adopts paragraphs 1 through 34 of the Amended Complaint above as if fully restated herein.

35. On May 10, 2017, a representative of the Defendant met with Plaintiff to discuss Plaintiff's concerns.

36. The Defendant's representative represented that Defendant would make the situation right.

37. The Defendant failed to appropriately address the situation.

38. The representation by Defendant's representative that Defendant would remedy the situation was an oral agreement.

39. The Defendant has breached that agreement.

40. The Plaintiff has been damaged by Defendant's failure to remedy the situation.

[DE 9 at 63-64].

>Similarly, in Count III, Premier alleges that:
>
>41. Plaintiff adopts paragraphs 1 through 39 of the Amended Complaint above as if fully restated herein.
>
>42. On June 7, 2017, a representative of the Defendant met with Plaintiff again to discuss the ongoing concerns with the work performed by Defendant.
>
>43. The Defendant's representative again represented that Defendant would make the situation right.
>
>44. The Defendant failed to appropriately address the situation.
>
>45. The representation by Defendant's representative that Defendant would remedy the situation was an oral agreement.
>
>46. The Defendant has breached that agreement.
>
>47. The Plaintiff has been damaged by Defendant's failure to remedy the situation.

[DE 9 at 64].

Bedrock argues that Count II and Count III fail as a matter of law because there is no evidence that the alleged oral agreements were supported by consideration, an essential element of a claim for breach of contract. [DE 29-1 at 149-50]. Premier responds that they were because "[i]n exchange for not asserting a legal claim against Bedrock, Premier agreed to allow Bedrock to attempt to correct the complained of deficiencies." [DE 37 at 219].

>"Consideration" is
>
>A benefit to the party promising, or a loss or detriment to the party to whom the promise is made. 'Benefit,' as thus employed, means that the promisor has, in return for his promise, acquired some legal right to which he would not have otherwise have been entitled. And 'detriment' means that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise.

*Price v. Toyota Motor Mfg. Kentucky*, No. 2017-CA-000560-WC, 2017 WL 3498777, at *4 (Ky. Ct. App. July 28, 2017).

"Consideration for a contract may be a benefit to the promisor, or a detriment to the promise." *Grass v. Akins*, 368 S.W.3d 150, 153 (Ky. Ct. App. 2012). "[T]he forbearance of a right to sue is valid consideration to support a promise." *Huff Contracting v. Sark*, 12 S.W.3d 704, 707 (Ky. Ct. App. 2000). "When no consideration is present, a valid contract is not formed." *Price*, 2017 WL 3498777, at *4.

Premier is correct that "forbearance of a right to sue" may constitute "valid consideration to support a promise." *Huff*, 12 S.W.3d at 707. Unfortunately, the record lacks any evidence that the alleged oral agreements were supported by this consideration.[2] And, when given the chance, Premier failed to articulate this theory of consideration in both its answers to Bedrock's interrogatories and Mr. Corbett's affidavit. Premier's counsel's unsupported assertion that "in exchange for not asserting a legal claim against Bedrock, Premier agreed to allow Bedrock to attempt to correct the complained of deficiencies" is insufficient to survive summary judgment. *See Sanders v. Motorists Mut. Ins. Co.*, No. CIV. A. 3:08-37-DCR, 2010 WL 3634668, at *2 (E.D. Ky. Sept. 14, 2010) ("The plaintiffs presented no evidence of any consideration given by them in exchange for Motorists Mutual's alleged promise to pay the costs of repairs to their home. None . . . It should be apparent that consideration is an essential element of a valid contract. Without proving that they gave some form of consideration, the plaintiffs could not prevail on their breach of contract claim"). As a result, the Court grants Bedrock's motion for partial summary judgment as to Count II and Count III.

---

[2] The Court notes that Premier also failed to allege in its Amended Complaint that the consideration for these oral agreements was its forbearance of its right to sue. [*See generally* DE 9 at 63-64].

## IV. CONCLUSION

Having considered the parties filings and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** that:

(1) Bedrock's Motion for Partial Summary Judgment, [DE 29], is **GRANTED**.

(2) Premier's Amended Complaint [DE 9] is **DISMISSED** with prejudice.

Rebecca Grady Jennings, District Judge
United States District Court

September 7, 2021

cc: counsel of record